IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER M. VOYLES, | § | |
|     Plaintiff, | § | |
| v. | § | No. 3:10-CV-0652-B |
| | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Jennifer M. Voyles ("Plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court considered Plaintiff's Opening Brief, Defendant's Brief, and Plaintiff's Reply Brief. The Court reviewed the record in connection with the pleadings. The final decision of the Commissioner should be **REVERSED** and **REMANDED** for further proceedings.

**Background**[1]

**Procedural History**

Plaintiff filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income on June 16, 2006 (Tr. 57, 116-122), asserting that she has been disabled since January 1, 2006 (Tr. 116, 120). Following initial and reconsideration determinations denying her claims (Tr. 58-65, 72-77), Plaintiff filed a Request for Hearing before an Administrative Law Judge (Tr. 79).

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

A hearing was held before Administrative Law Judge James R. Blinn, Jr. ("the ALJ") on February 29, 2008 (Tr. 10-42). Testimony was obtained from Plaintiff and from Ms. Karyl Kuuttila, a vocational expert witness ("VE"). Plaintiff was represented by Kenneth Collins, a certified non-attorney representative ("representative") (Tr. 12). The ALJ issued an unfavorable decision on September 24, 2008 (Tr. 47-57). Plaintiff, through her representative, filed a Request for Review by the Appeals Council (Tr. 8-9) and submitted a brief in support of her contentions (Tr. 194-195). The Appeals Council denied the Request for Review of the ALJ's decision (Tr. 1-4), rendering same the final decision of the Commissioner. Thereafter, this case was filed in a timely manner.

## Plaintiff's Age, Education, and Work Experience

Plaintiff was born October 21, 1975, and graduated from high school (Tr. 19). She was previously employed as a daycare attendant, courtesy booth attendant, office manager, retail store supervisor, and cashier (Tr. 39).

## Plaintiff's Medical Evidence

Plaintiff was under the care of Dr. H. Iqbal, a primary care physician. Plaintiff reported that she was paranoid, depressed, and anxious. She further reported disturbance of mood. Dr. Iqbal diagnosed generalized anxiety disorder and depression and placed Plaintiff on Wellbutrin and Prozac. In addition, the doctor increased her diabetes medications of Glipizide and Metformin (Tr. 207). Subsequent records reflect that Plaintiff continued to complain of depression, anxiety, and sleep disturbance and Dr. Iqbal diagnosed bipolar disorder (Tr. 206, 202-204). Laboratory studies were positive for hepatitis C (Tr. 208) and Plaintiff's blood glucose was recorded at 238 (Tr. 210).

Plaintiff received treatment at Dallas Metrocare Services (Tr. 215-226). She was evaluated on July 12, 2006, and was diagnosed with a major depressive disorder, single episode, of moderate

2

severity. A diagnosis of anxiety disorder, not other specified ("NOS") was also reported. A Global Assessment of Functioning ("GAF") score of 48 was indicated. Pursuant to American Psychiatric Association criteria, such a score indicates serious symptoms, or any serious impairment in social, occupational, or school functioning. Examples given are of an individual who is unable to keep a job. See, American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. (DSM-IV)</u>, p. 32.

Progress records of Dallas Metrocare Services indicate that the diagnoses and assessment remained the same in October 2006 (Tr. 301).

Records of Texas Gastrointestinal Associates reflect that Plaintiff was treated for chronic active hepatitis C (Tr. 295-299). A liver biopsy revealed mild fibrosis and mild to moderate liver inflammation. Due to the minimal fibrosis found on liver biopsy, it was felt that she should not be started on Interferon and Ribavirin therapy (Tr. 295).

Then Dr. Tamika L. Perry became Plaintiff's treating physician (Tr. 309-325). Perry managed the Plaintiff's diabetes with insulin and Metformin. She also prescribed Wellbutrin for depression, Ativan for anxiety, and Trazadone for insomnia (Tr. 324). Treatment notes indicate that Plaintiff was found to be 5 feet 9 inches tall and weighed in excess of 258 pounds, yielding a body mass index (BMI) of 38.12 (Tr. 318). Plaintiff continued to complain of anxiety despite her medications (Tr. 321, 318). On May 23, 2007, Dr. Perry noted that Plaintiff presented with mania, described as incapacitating, with increasing episodes. Associated signs and symptoms included behavioral changes and elevated mood. The diagnosis continued to be bipolar disorder, and her medications of Ativan for anxiety, Trazadone for insomnia and Wellbutrin for depression were continued (Tr. 315-317). However, on July 24, 2007, Dr. Perry noted that Plaintiff called and was crying, indicating problems

3

with bills and her family and asked for an increase of Wellbutrin. The doctor agreed and ordered an increase in medication (Tr. 309). Due to an exacerbation of symptoms of anxiety and depression following the death of her father, Plaintiff advised Dr. Perry that she would be returning to Dallas Metrocare Services (Tr. 356).

Plaintiff was seen at Dallas Metrocare Services, reporting mood swings, sleep disturbance, depression, and paranoia (Tr. 367). Her condition was diagnosed as bipolar II disorder and a GAF score of 48 was reported for current functioning and as the highest level of functioning over the past year (Tr. 368). She was said to have made some progress in February 2008 (Tr. 380).

State Agency physicians reviewed the evidence and determined that Plaintiff had an affective disorder and an anxiety-related disorder (Tr. 241). These produced moderate difficulties in Plaintiff's ability to maintain social functioning (Tr. 251). A mental residual functional capacity assessment found Plaintiff to be moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others (Tr. 255-256).

At the hearing, the ALJ and Plaintiff's representative discussed a medical source statement prepared by Dr. Tamika Perry on May 23, 2007(Tr. 13). The ALJ reported that he did not have this assessment (*Id.*), and the ALJ and representative speculated that it may have been marked as Exhibit 15F or Exhibit 16F (Tr. 14). Apparently, two medical source statements were submitted, one with

regard to Plaintiff's physical impairments and one with regard to her mental impairments (Tr. 15). The ALJ indicated that it looked incomplete, asked the representative for a copy of the form, and ordered the hearing reporter to make copies of the forms (Tr. 16, 18). Plaintiff reported that she took the forms to Dr. Perry to be completed but she was not present when the doctor completed the forms (Tr. 22-23). The ALJ noted that Dr. Perry indicated that she could lift 50 pounds occasionally and 20 pounds frequently but would be absent from work three times per month (Tr. 25-26).

The ALJ advised Plaintiff's representative that he wanted additional information from Dr. Perry and was going to refer Plaintiff for a full battery psychological evaluation (Tr. 39, 41-42). He specifically told Plaintiff's representative "I'm going to send a letter through you, Mr. Collins, to Dr. Perry. I've got some questions I want to ask him. Then we'll send, we'll, we're going to send Ms. Voyles out. I want a full battery on this and we'll see where we're at" (Tr. 41-42).

The administrative record contains an unsigned medical source statement of ability to do work-related activities (mental), consisting of a first page of a form (Tr. 326). There is also an unsigned medical opinion regarding ability to do work-related activities, which again appears to be the first page of a form (Tr. 327).

Plaintiff testified that she has anxiety and feels paranoid when she is around a lot of people (Tr. 21). The Mental Health and Mental Retardation (MHMR) agency is treating her for bipolar disorder (Tr. 27). Her medications include Lorazepam, which makes her drowsy, to the point "where I'm not aware, you know, kind of like in a zone..." (Tr. 28). She reported that she sleeps only two to three hours a night and that before she goes to bed she has to check her doors three times to make sure that she is safe. She acknowledged that unfamiliar sounds frighten her, especially at night but sometimes during the day as well (Tr. 29). She admitted that she feels anxious and paranoid when

5

she goes to activities for her children (Tr. 31) and when she sees "camera flashes at the school functions it makes me paranoid and I have to go outside..." (Tr. 32). She tries to engage in family functions "but normally I wind up crying because I think my family is out to get me, the other family members" (Tr. 35). She stated that when she worked, she was nice to her co-workers but "I really wasn't close to anybody because I'd be afraid that they would be against me or talk about me or, so I really didn't get close to anybody" (Tr. 30). She also reported that she is afraid of other patients in the waiting room at her doctor's office (Tr. 37).

      The vocational expert witness identified Plaintiff's past work as sedentary to light in exertion, semi-skilled to skilled (Tr. 39). The ALJ posed a hypothetical question which assumed an ability to lift 20 pounds occasionally and 10 pounds frequently; stand or walk six hours in an eight-hour work day; sit six hours in an eight-hour work day; and further assumed the ability to understand and carry out simple instructions. However, the individual's interaction with co-workers and supervisors was said to be limited to incidental to the work performed. The person was said to be able to adapt to a routine work environment with superficial contact with the public. Based upon this hypothetical question, the VE reported that none of the Plaintiff's past jobs could be performed. However, the VE identified light jobs of garment sorter, cleaner or housekeeper, and bakery worker, conveyor line which could be performed (Tr. 40-41). A second hypothetical question which assumed the same physical limitations but substituted a frequent inability to maintain attention and concentration and a frequent inability to complete a normal work week without interruptions from psychologically based symptoms yielded a response from the VE that with those limitations, no past work or other work could be performed (Tr. 41).

Subsequent to the hearing, Plaintiff was referred for a consultative examination conducted by Dr. Katherine S. Donaldson, a clinical psychologist (Tr. 381-391). Plaintiff was initially tearful during the testing but was gradually able to relax. She reported that she has trouble working because she becomes paranoid and anxious. She advised Dr. Donaldson that she became fearful of going to the grocery store and uncomfortable when she had to be in a situation with other people, such as family gatherings or school programs. "She stated that (she) saw shadows and slept with a bat because she was afraid" (Tr. 385). Plaintiff reported symptoms of depression including sadness, difficulty with memory and concentration, irritability, and insomnia. She further described impulsive behaviors and reported that she experiences pressured speech, at times. She further advised Dr. Donaldson that although she performs some household activities, on some days she stays in bed all day. She does not like to leave the house and reported feeling safer at home, although she usually attends church on Sundays and "can sit there for a couple of hours when I take my anxiety medicine" (Tr. 386).

Plaintiff advised Dr. Donaldson that she repeated the third grade. She graduated high school and then earned a certificate "for software." Her longest job held was as a crossing guard, which she performed for two years. She gave a history of prior substance addiction but stated that she had been sober for almost four years (Tr. 387).

Dr. Donaldson administered a number of mental tests, including the Wechsler Adult Intelligence Scale, Wide Range Achievement Test and Minnesota Multiphasic Personality Inventory-2. Mental status examination found that Plaintiff's judgment and insight appeared to be poor (Tr. 388). Her I.Q. scores revealed a verbal I.Q. of 71, a full scale I.Q. of 76 and a performance I.Q. of 85. The first two scores were in the borderline range of intelligence. Index scores revealed that her

working memory and processing speed were extremely low. Her performance was borderline on verbally mediated tasks requiring her to utilize her fund of general information and knowledge of basic word meanings. Her performance overall was low average on tasks requiring attention, concentration and visuomotor coordination (Tr. 389). The Plaintiff's reading and spelling were at the equivalent of fifth grade, in the fifth and third percentiles, respectively. Her arithmetic was at the sixth grade level, deemed to be at the tenth percentile (Tr. 390).

On the MMPI, Dr. Donaldson reported that it appears likely that the results were a result of her difficulty with reading. "Test results indicate that Ms. Voyles reads at a 5th grade level, while an 8th grade level is required for MMPI results to be valid." The doctor noted that this test was administered before Plaintiff's reading level had been determined. The profile suggested that she was experiencing a great deal of paranoia and may at times be delusional. "Her results suggest that she is unable to handle the responsibilities of everyday life" (Tr. 390).

Dr. Donaldson diagnosed bipolar II disorder, a history of polysubstance abuse and borderline intellectual functioning. A GAF score of 49 was reported. The doctor advised that Plaintiff would have difficulty making occupational, personal, and social adjustments. Further, in view of her limited reading, spelling, and arithmetic, she would be limited to employment opportunities that do not require her to perform above 5th and 6th grade levels. Further, she may continue to experience episodes of depression and hypomania. With therapy and medication compliance, her prognosis was fair for functioning in a relatively stress free environment. "However, she will likely continue to have difficulty in stressful situations" (Tr. 391). Dr. Donaldson completed an assessment of ability to perform work-related activities in which she advised that Plaintiff would have marked limitations in her ability to make judgments on complex work-related decisions, and would have moderate

8

limitations in her ability to understand, remember, and carry out complex instructions (Tr. 381). She would be moderately limited with regard to her ability to respond appropriately to usual work situations and to changes in a routine work setting (Tr. 382). Dr. Donaldson opined that Plaintiff is unable to manage benefit payments in her own interest (Tr. 384).

## **The ALJ's Decision**

The ALJ found that Plaintiff suffers from severe impairments of hepatitis C, obesity, diabetes, bipolar disorder, depression, anxiety, and borderline intellectual functioning (Tr. 52, Finding No. 3) but that she did not have an impairment or combination of impairments that meets or equals in severity the requirements of an impairment listed in the Commissioner's Appendix 1 (Id.). The ALJ determined that Plaintiff had the capacity to perform the physical demands of light work. Further, she retained the ability to understand and carry out simple instructions, but interaction with co-workers and supervisors was limited to incidental to the work performed. She further can adapt to a routine work environment with superficial contact with the public (Tr. 53, Finding No. 5). Based upon this RFC, Plaintiff would be unable to perform any of her past relevant work (Tr. 55, Finding No. 6) but could perform the other jobs identified by the VE, which exist in significant numbers in the economy (Tr. 56, Finding No. 10). Accordingly, the ALJ found that Plaintiff was not disabled (Tr. 57, Finding No. 11).

## **Standard of Review**

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically

9

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*.

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to

support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Moreover, the terms of 20 C.F.R. § 404.1527 define "medical opinions" and instruct claimants how the Commissioner will consider the opinions.[2] In the Fifth Circuit, "the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d 448, 455 (5th Cir. 2000); *see Floyd v. Bowen,* 833 F.2d 529, 531 (5th Cir.1987).

An ALJ has a duty "scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts" when a claimant is not represented by counsel. *Bowling v. Shalala,* 36 F.3d 431, 437 (5th Cir. 1994) (quoting *Kane v. Heckler,* 731 F.2d 1216, 1219-20 (5th Cir. 1984)).

## Issues

Plaintiff claims that the Commissioner violated due process by failing to contact Plaintiff's treating physician, Dr. Perry, and admit into evidence Dr. Perry's relevant medical evidence. (Pl.'s

---

[2] The terms of 20 C.F.R. § 404.1527(a)(2) provide:

(2) Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

11

Br. at 1.) Plaintiff further contends that the Commissioner did not carry his burden at the fifth step of the sequential evaluation process in that he failed to consider all of Plaintiff's vocationally significant impairments when he determined that she had the ability to perform other work that exists in significant numbers in the national and local economies. (*Id*.)

The Commissioner contends that the ALJ fully and fairly developed the record, but if legal error occurred, it was harmless because the missing evidence is not as compelling as Dr. Perry's treatment records. (Def.'s Br. at 4-5.) The Commissioner asserts that Dr. Perry's treatment records support the ALJ's RFC finding and ultimate findings that Plaintiff was not disabled. (*Id*.) The Commissioner contends that the fact that the ALJ sent Plaintiff for a consultative psychological exam shows that the ALJ did not fail to develop the record. (*Id*. at 7.) Finally, the Commissioner contends that the ALJ properly considered all of Plaintiff's functional limitations that were shown by the record. (*Id*. at 8-9.)

## **Analysis**

As previously noted, at the hearing, the ALJ told Plaintiff's representative that although he had Dr. Perry's physical RFC form, he had only the first page of Dr. Perry's mental RFC form. The ALJ expressed concern that he did not understand Dr. Perry's statement and wanted more information from Dr. Perry. (Tr. 25.) The ALJ stated he had some questions he wanted to ask Dr. Perry and would send a letter to the doctor through Plaintiff's representative. (*Id*.) The record does not show that the ALJ ever contacted the treating physician with his questions, and the complete mental medical source statement is not in the record. The Commissioner maintains that the ALJ's failure to incorporate into the evidence Dr. Perry's medical source statement was, if error, "harmless error." (Def.'s Br. at 5.) The mental residual functional capacity form in question is a medical source

statement. "A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC.... Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions." (Social Security Ruling 96-5p.) "The regulations recognize that treating sources are important sources of medical evidence and expert testimony, and that their opinions about the nature and severity of an individual's impairment(s) are entitled to special significance; sometimes the medical opinions of treating sources are entitled to controlling weight." (Social Security Ruling 96-5p.) 20 CFR 404.1527 and 416.927 set forth factors to be considered in weighing medical opinions. These include: (1) the length of the treatment relationship; (2) consistency with other opinions; (3) particular expertise of the treating source; (4) supportability, and other factors. The regulation provides that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

"[B]efore rejecting a treating source opinion, the ALJ must consider the factors outlined in Section 404.1527(d) of the Administration's administrative regulations, including: the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. See 20 C.F.R. § 404.1527; *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). SOCIAL SECURITY RULING ("SSR") 96-2p, 96-5p." *Sherman v. Barnhart*, 2001 WL 34373157 * 6 (N.D. Tex. 2001) (Bleil, MJ).

The Court finds that the ALJ committed legal error by failing to recontact the treating physician and admit the mental medical source statement into evidence. The record is incomplete. Further, the ALJ did not consider the factors set forth in the Commissioner's regulations for evaluating the treating physician's opinion. The error is not harmless because if the ALJ had considered the opinion of Dr. Perry, he might have found Plaintiff disabled. According to Plaintiff, Dr. Perry found: (1) marked limitations in the Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers; (2) extreme limitation in her ability to respond appropriately (a) to work pressures and (b) to changes in a routine work setting; (3) extreme limitation in her ability (a) to complete a normal work day and work week without interruptions from psychologically based symptoms and (b) to work in proximity to others without exhibiting behavioral extremes. (Tr. 195.) The VE stated that even a frequent inability to complete a normal work day and work week would preclude gainful employment. (Tr. 41.) Further, Dr. Perry also found that Plaintiff would miss three days of work per month. (Tr. 25.)

Thus, Plaintiff has shown prejudice from the ALJ's failure to fulfill his promise to recontact Dr. Perry and to admit and consider relevant evidence. In his brief, the Commissioner suggests that Dr. Perry's assessment on the form is not supported by the doctor's treatment records. (Def.'s Br. at 6-7.) The ALJ must evaluate all the evidence and reach a conclusion regarding Dr. Perry's opinion. The Commissioner asserts that the ALJ's sending the Plaintiff for a post-hearing consultative psychological evaluation establishes that he adequately developed the record. (Def's Br. at 7.) The ALJ's unequivocal statement indicated that he had questions for Dr. Perry and that he would ask the doctor to address these questions by sending a letter to the doctor through the Plaintiff's representative. He also stated he would order a consultative examination. "A reviewing Court can

evaluate an agency's decision only on the grounds articulated by the agency." (*Ceguerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *Baylor University Medical Center v. Schweiker*, 571 F. Supp 374 (N.D. Tex. 1983). Courts have no authority to supply a ground for the agency's decision. (*O'Connor v. Sullivan*, 938 F.2d 70 (7th Cir. 1991); *citing SEC v. Chenery Corp.*, *supra*; *Brown v. Bowen*, 794 F.2d 703, 708 n.7 (D.C. Cir. 1986); *Pate v. Director*, 834 F.2d 675, 676 (7th Cir. 1987)). "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council. *See Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir.1985) (citing *Dong Sik Kwon v. INS*, 646 F.2d 909, 916 (5th Cir. 1981) (en banc))." *Newton v. Apfel*, 209 F. 3d 448, 455 (5th Cir. 2000). Accordingly, the Commissioner's suggestion that this Court find an alternative basis to support the ALJ's decision is improper as a matter of law. The ALJ had a duty to recontact the treating physician with his questions, particularly in light of his announcement of his intent to do so.

The Commissioner claims that Plaintiff has not shown that she has limitations which would preclude substantial gainful activity. (Def.'s Br. at 8.) However, the ALJ failed to question the VE about the significant limitations found by the treating physician, the State Agency physician and the consulting psychologist. The ALJ failed to consider these significant limitations in determining the Plaintiff's RFC. Further, the ALJ stated in his decision that the Plaintiff has "moderate limitations in her ability to maintain concentration, persistence, or pace" (Tr. 53) but did not pose these limitations to the VE in his hypothetical question. (Tr. 40.) "While the (vocational) expert was later asked whether the jobs identified were 'fairly simple, routine, [and] repetitive or involv[ed] simple, routine, repetitive type tasks[,]' it is not clear that this adequately encompassed the impairments recognized by the ALJ. *Cf., e.g., Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005)

(limitation to simple, unskilled tasks not sufficient to incorporate impairments such as moderate difficulties with maintaining concentration, persistence, or pace); *Leighton v. Astrue*, No. 07-142-B-W, 2008 WL 2593789, at *4 (D. Me. June 30, 2008) (report and recommendation of magistrate judge subsequently accepted by district court) ('limitations on contact with the public, routine supervision, interaction with coworkers, and work changes and pace' inadequate to account for 'moderate difficulties in maintaining social functioning and concentration, persistence or pace'); *Davis v. Astrue*, Civil Action No. 06-3550, 2007 WL 2248830, at *4 (E.D. Penn. July 30, 2007) (requiring deficiencies in concentration, persistence or pace to be specified in the hypothetical)." *Jones v. Astrue*, 2009 WL 1039437 *2, (M.D. Fla. Apr. 16, 2009). The ALJ did not account for the erosion of the occupational base through the VE's testimony because the ALJ never asked the VE about the State Agency limitations. Further, the ALJ never questioned the VE about the limitations found by Dr. Donaldson, the post-hearing consulting psychologist. Accordingly, the ALJ had no basis for determining that the limitations which Dr. Donaldson found would not negatively impact Plaintiff's ability to perform other work identified by the VE. Hence, the ALJ's determination at step 5 of the sequential evaluation of disability that Plaintiff can perform other work and that such work exists in significant numbers in the economy (Tr. 56-57) is not supported by substantial evidence.

## **Recommendation**

The Court recommends that the District Court reverse the Commissioner's unfavorable decision and remand the case for further development of the Administrative Record, including, but not limited to, Dr. Perry's medical support statement and diagnosis, the ALJ's questions and Dr. Perry's answers to the ALJ's questions about the mental statement form, the ALJ's consideration of the treating physician Dr. Perry's assessments in accordance with the standard set forth in the terms

16

of 20 C.F.R. § 404.1527,[3] and further VE testimony addressing the limitations found by the treating physician, the State Agency physician, and the consulting psychologist.

Signed, February 16, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[3] The terms of 20 C.F.R. § 404.1527(a)(2) provide:

(2) Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).